## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PAUL L. TURNER**                                                    **CIVIL ACTION**

**VERSUS**                                                                **NO. 12-1056**

**STEVE RADER, WARDEN**                                    **SECTION "C"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.      State Factual and Procedural Background

The  petitioner, Paul L. Turner ("Turner"), is a convicted inmate incarcerated in the Dixon Correctional Center in Jackson, Louisiana.[2]  On November 29, 2007, Turner and a co-defendant, Daniel Burges, were charged by bill of information in Orleans Parish with possession with intent

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

to distribute cocaine.[3] Turner entered a plea of not guilty on January 11, 2008.[4] The record provided does not indicate the disposition of the charge against the co-defendant Burges.

The record reflects that, on August 26, 2006, Detective Frankie Watts was assigned to work undercover in the area of North Rampart Avenue and St. Philip Street, a high crime area that experienced a rash of robberies, car break-ins and other crimes.[5]  Officers Brian Elsensohn and Scott Rodrigue were working with Watts as his cover team in the Treme area.  Their assignment was to hang out in the area to look for and curtail criminal activity including narcotics transactions.

At one point, Watts was approached at the intersection of North Rampart and St. Philip by a white male who solicited him to purchase narcotics.  This man was not a confidential informant. The white male told Watts ". . . if you're waiting, I can show you a house that we can purchase narcotics from."  Using hand signals, Watts notified the other officers that he would be relocating away from the intersection.  Watts followed the white male to the intersection of Ursuline Avenue and Marais Street where he saw Turner approach the white male.  The white male gave Turner a ten-dollar bill.  Turner reached into his mouth, removed a rock substance and showed it to the white male.  Watts immediately recognized the object as crack cocaine; he was approximately 10 feet from them at the time of the exchange.  Watts directed by the white male to come closer and inspect the cocaine to see which one he wanted to buy.

Upon observing the rocks, Watts gave a hand signal to Officers Elsensohn and Rodrigue that a drug transaction had taken place.  Watts identified himself as a police officer and displayed his

---

[3]St. Rec. Vol. 2 of 8, Bill of Information, 11/29/07.

[4]St. Rec. Vol. 1 of 8, Minute Entry, 1/11/08.

[5]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Turner*, 50 So.3d 836, 838-839 (La. App. 4th Cir. 2010); St. Rec. Vol. 6 of 8, 4th Cir. Opinion, 2010-KA-0038, pp. 3-5, 9/29/10.

badge to Turner and the white male. Watts had arrested Turner for possession of crack cocaine in the Treme area 34 days before this arrest. When Watts identified himself as a police officer, the white male called out "... aw f*ck," and Turner turned slightly and threw the cocaine on the ground. When Officers Elsensohn and Rodrigue arrived, they detained Turner, and Watts recovered the two rocks of crack cocaine. The rocks were not wrapped or bagged at that time. Turner was arrested for distribution of cocaine and transported to central lock-up. The $10 bill apparently was not seized as evidence by the transport officers and was not made part of the evidence. It also was not seized from Turner when he was booked.

During pretrial proceedings, on January 14, 2009, Turner's counsel moved to recuse the state trial court judge, Judge Keva Landrum Johnson, because she had served temporarily as the Orleans Parish District Attorney while Turner's case was pending and before being seated and assigned to Turner's criminal case.[6]

At a hearing held March 6, 2009, before Judge Pro Tempore Melvin Zeno, the motion was denied.[7] Turner's application for writ of mandamus to the Louisiana Fourth Circuit Court of Appeal seeking Judge Johnson's recusal was denied as moot on March 25, 2009.[8]

Turner's case was called for trial on June 22, 2009, at which, upon his motion, Turner represented himself, and the Trial Court appointed stand-by counsel for consultation purposes only.[9] The Court conducted a thorough review of his competency and understanding before allowing him

---

[6]St. Rec. Vol. 2 of 8, Motion to Recuse, 1/14/09.

[7]St. Rec. Vol. 6 of 8, Motion Hearing Transcript, 3/6/09.

[8]St. Rec. Vol. 2 of 8, 4th Cir. Order, 2009-K-0156, 3/25/09.

[9]St. Rec. Vol. 6 of 8, Trial Transcript, p. 3, 6/22/09.

to do so.[10]  Turner was tried before a jury on June 22, 2009, and was found guilty as charged.[11]

Thereafter, on July 15, 2009, the Trial Court sentenced Turner to serve 13 years at hard labor.[12]  The

Court also denied Turner's motion to reconsider the sentence.[13]

Shortly thereafter, on July 21, 2009, the Louisiana Fourth Circuit granted in part Turner's

writ application seeking review of the denial of his motion to recuse.[14]  The Court ordered that the

Trial Court reconsider the motion to recuse in light of a Louisiana Supreme Court opinion issued

April 3, 2009.  On July 27, 2009, the Trial Court sent a letter to the Louisiana Fourth Circuit

indicating that the motion was reconsidered and found moot in light of his conviction before a jury

and his sentencing on July 15, 2009.[15]

Turner returned to the Louisiana Fourth Circuit on September 1, 2009, seeking mandamus

relief for the Trial Court's failure to comply with the Court's July 21, 2009, directive.[16]  The

application was denied on October 1, 2009, because the Trial Court had complied by its letter of July

27, 2009.[17]

---

[10]*Id.*, pp. 3-11.

[11]St. Rec. Vol. 1 of 8, Trial Minutes, 6/22/09 (erroneously showing guilty of possession with intent to distribute crack); St. Rec. Vol. 2 of 9, Jury Verdict, 6/22/09; St. Rec. Vol. 6 of 8, Trial Transcript, 6/22/09.

[12]St. Rec. Vol. 1 of 8, Sentencing Minutes, 7/15/09; St. Rec. Vol. 6 of 8, Sentencing Transcript, 7/15/09.

[13]St. Rec. Vol. 6 of 8, Sentencing Transcript, p. 3, 7/15/09; St. Rec. Vol. 2 of 8, Motion to Reconsider Sentence, 7/13/09; *see also*, Motion for New Trial, 7/13/09; Trial Court Order, undated; Motion for Post-Verdict Judgment of Acquittal, 7/13/09; Trial Court Order(2) (undated).

[14]St. Rec. Vol. 4 of 8, 4th Cir. Order, 2009-K-0901, 7/21/09; 4th Cir. Writ Application, 2009-K-0901, 7/7/09 (dated 6/17/09).

[15]St. Rec. Vol. 2 of 8, Letter to 4th Cir. Clerk of Court, 7/27/09.

[16]St. Rec. Vol. 4 of 8, 4th Cir. Writ Application, 2009-K-1194, 9/1/09 (dated 8/28/09).

[17]St. Rec. Vol. 4 of 8, 4th Cir. Order, 2009-K-1194, 10/1/09.

In the meantime, the State filed a multiple bill charging Turner as a fourth or greater felony offender, to which Turner objected.[18] On October 23, 2009, the Court denied Turner's second motion to reconsider the motion to recuse the state court trial judge.[19] After a full hearing held that day, the Court adjudicated Turner to be a fourth felony offender and re-sentenced Turner to serve 30 years in prison.[20] The Court also denied Turner's related motions, including motions to correct an illegal sentence and for a new trial on the multiple bill.[21]

On direct appeal, Turner's appointed counsel raised two errors for review:[22] (1) the Trial Court erred in denying the motion to recuse, misrepresenting the status of the case, and denying the motion to recuse a second time before the multiple bill hearing; and (2) the Trial Court erred in imposing an unconstitutionally excessive sentence.

On July 13, 2010, the Louisiana Fourth Circuit granted Turner leave to file a *pro se* supplemental brief within 20 days of the order, or until August 2, 2010.[23] Turner sent a letter to the

---

[18]St. Rec. Vol. 2 of 8, Multiple Bill, 7/16/09; Motion to Quash Multiple Bill, 7/13/09; Motion to Quash Multiple Bill, 8/24/09; Response to Multiple Bill, 8/24/09; St. Rec. Vol. 1 of 8, Minute Entry, 8/24/09.

[19]St. Rec. Vol. 2 of 8, Motion to Reconsider Motion to Recuse, 10/23/09; Trial Court Order, 10/23/09.

[20]St. Rec. Vol. 1 of 8, Multiple Bill Hearing Minutes, 10/23/09; St. Rec. Vol. 6 of 8, Multiple Bill Hearing Transcript, 10/23/09.

[21]St. Rec. Vol. 6 of 8, Multiple Bill Hearing Transcript, p. 24, 10/23/09; St. Rec. Vol. 2 of 8, Motion to Quash Multiple Bill, 8/21/09; Trial Court Order(2), 10/23/09; Motion to Correct Illegal Sentence, 8/24/09; Trial Court Order(3), 10/23/09; Motion for New Trial (on the multiple bill), 8/24/09, Trial Court Order(4), 10/23/09.

[22]St. Rec. Vol. 3 of 8, Appeal Brief, 2010-KA-0038, undated.

[23]St. Rec. Vol. 6 of 8, 4th Cir. Order, 2010-KA-0038, 7/15/10; Motion to File Supplemental Direct Appeal Brief, 2010-KA-0038, 7/8/10.

clerk of that Court on July 26, 2010, asking for an extension of time.[24]  The Court granted Turner

seven days from its order, or until August 5, 2010,[25] to file the supplemental brief.[26]

Turner's supplemental brief was filed by the Court on August 3, 2010, and he raised the

following arguments: (1) there was insufficient evidence on the element of specific intent to support

the guilty verdict; (2) ineffective assistance of counsel when counsel failed to object to the

insufficient evidence used at the multiple bill hearing; and (3) he was denied the right to represent

himself during the multiple bill hearing because of stand-by counsel's unsolicited participation.

On September 29, 2010, the Louisiana Fourth Circuit affirmed his conviction and sentence

specifically addressing and finding no merit in the two claims raised by Turner's counsel.[27]

On October 17, 2010, Turner submitted a writ application to the Louisiana Supreme Court

arguing that the Louisiana Fourth Circuit erred in denying his appeal without considering his *pro

se* grounds for relief, and also raising the two claims asserted by counsel on direct appeal and the

three claims presented in his *pro se* appellate brief.[28]  The Court denied the writ application without

stated reasons on February 25, 2011.[29]

Turner's conviction became final 90 days later, on May 26, 2011, because he did not file a

writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir.

---

[24]St. Rec. Vol. 6 of 8, Letter to the 4th Cir. Clerk, 2010-KA-0038, 7/28/10 (dated 7/26/10).

[25]Under La. Code Crim. P. art. 13, a calculation only excludes weekends and holidays if it is less than seven days.

[26]St. Rec. Vol. 7 of 8, 4th Cir. Order, 2010-KA-0038, 7/29/10.

[27]*State  v. Turner*, 50 So.3d at 836; St. Rec. Vol. 6 of 8, 4th Cir. Opinion, 2010-KA-0038, 9/29/10.

[28]St. Rec. Vol. 7 of 8, La. S. Ct. Writ Application, 10-KO-2383, 10/21/10 (dated 10/17/10); St. Rec. Vol. 6 of 8, La. S. Ct. Letter, 2010-KO-2383, 10/21/10 (showing postmark of 10/18/10).

[29]*State v. Turner*, 58 So.3d 460 (La. 2011); St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2010-KO-2383, 2/25/11.

1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

Prior to that date, on April 11, 2011, Turner submitted an application for post-conviction relief to the state trial court raising the following grounds for relief: (1) the Trial Court erred in adjudicating him to be a fourth offender without requiring the State to show that he was advised of and knowingly, voluntarily, and intelligently waived his rights to trial, his privilege against self-incrimination, and his right to confront his accusers; (2) counsel was ineffective during the multiple bill hearing for failing to object to the validity of the prior convictions, failing to file a written objection to the multiple bill, failing to object to the State's introduction of the multiple bill with his fingerprints affixed, and failing to object to the State's failure to present the arraignment transcript to prove waiver of his right to remain silent; and (3) counsel was ineffective at trial for his failure to inform the Trial Court about or move to stay because of Turner's *pro se* motion to recuse pending in the Louisiana Fourth Circuit to prevent the Trial Court from proceeding.  The Trial Court denied the application as meritless on April 29, 2011, without further stated reasons.[30]

The Louisiana Fourth Circuit denied Turner's related writ application on June 28, 2011, finding that he was not entitled to relief on any of the claims raised.[31]  The Louisiana Supreme Court also denied without comment Turner's writ application on April 9, 2012.[32]

---

[30]St. Rec. Vol. 4 of 8, Trial Court Judgment, 4/29/11.

[31]St. Rec. Vol. 8 of 8, 4th Cir. Order, 2011-K-0691, 6/28/11; 4th Cir. Writ Application, 2011-K-0691, 5/27/11 (dated 5/24/11).

[32]*State ex rel. Turner v. State*, 85 So.3d 140 (La. 2012); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2011-KH-1546, 4/9/12; La. S. Ct. Writ Application, 11-KH-1546, 7/13/11 (dated 7/7/11); St. Rec. Vol. 3 of 8, La. S. Ct. Letter, 2011-KH-1546, 7/13/11 (showing postal meter of 7/7/11).

**II.** **Federal Petition**

On April 25, 2012, the clerk of this Court filed Turner's federal petition for habeas corpus relief in which he listed eight grounds for relief, of which he only briefed five:[33] (1) the Louisiana Fourth Circuit erred in denying his direct appeal; (2) the Trial Court erred in denying the motion to recuse, misrepresenting the status of the case, and denying the motion to recuse a second time before the multiple bill; (3) the Trial Court erred in imposing an unconstitutionally excessive sentence; (4) insufficient evidence of specific intent to support a guilty verdict; (5) ineffective assistance of counsel when counsel (a) failed to object to insufficient evidence during habitual offender proceedings, (b) failed to file a written response to the multiple bill, and (c) failed to object to the admissibility of the multiple bill with his fingerprints on it; (6) he was denied the right to self-representation during the multiple bill proceedings by stand-by counsel's unsolicited participation; (7) the Trial Court abused its discretion in denying the application for post-conviction relief because the claims raised had merit; and (8) ineffective assistance of counsel at trial when counsel failed to inform the Trial Court that the *pro se* motion to recuse was pending in the Louisiana Fourth Circuit to prevent the Trial Court from proceeding with trial until there was a ruling.

The State filed a response in opposition to Turner's petition conceding its timeliness and exhaustion.[34] The State also argues that each of Turner's claims are without merit, although the State did not address his first claim regarding general error in the denial of his direct appeal.

Turner replied to the State's opposition arguing that the state trial court's denial of his application for post-conviction relief is contrary to federal law since the Trial Court's order fails to

---

[33]Rec. Doc. No. 1, pp. 15-16, 21, 22, 28, 38, 45.

[34]Rec. Doc. No. 9.

reference *Strickland v. Washington*, 466 U.S. 668 (1984), in its order.[35]  He also reiterates the other arguments made in support of his claims of ineffective assistance of counsel.

## III.  General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[36] applies to this petition, which is deemed filed in this Court on April 18, 2012.[37]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes timeliness and exhaustion and has not otherwise raised procedural default as a defense.  The Court also finds none of these defenses applicable from the record.  The Court will proceed to the substance of Turner's claims.

---

[35]Rec. Doc. No. 10.

[36]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[37]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Turner's federal habeas petition on April 25, 2012, when the filing fee was received.  Turner signed the memorandum in support attached to his petition on April 18, 2012.  This is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing.  The fact that he paid the filing fee also would not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 376).

## IV.    **Standards of Review on the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determination of questions of fact are presumed correct and the court must give deference to the state court findings unless they were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2)

extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V. **Analysis**

### A. **Denial of His Direct Appeal (Claim No. 1)**

Turner alleges that the Louisiana Fourth Circuit erred in denying his direct appeal. Although the basis for his argument is not clear, a broad reading of his pleading may indicate that he is discontent with the Court's failure to address his *pro se* assignments of error in its written opinion affirming his conviction and sentence.

To the extent Turner asks this Court to now provide appellate review of his claims, that is not the Court's role. A federal habeas court does not sit to ensure that perfect justice was done or that state courts' decision-making was free from all errors. Instead, "[f]ederal review of state convictions is confined to the very narrow standard of due process," and "before a federal court may overturn a state conviction, it must first find an error that amounts to a failure to observe that fundamental fairness essential to the very concept of justice." *Trussell v. Estelle*, 699 F.2d 256, 259 (5th Cir. 1983) (quotation marks omitted). For the following reasons, the purported errors identified by Turner did not render his appellate review so fundamentally unfair as to violate due process.

As a fundamental premise, "[t]he United States Constitution does not generally mandate the right to appeal a criminal conviction." *Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir. 1994) (citing *Griffin v. Illinois*, 351 U.S. 12, 19-21 (1956)). More than a century ago, the United States Supreme Court held as follows:

> A review by an appellate court of the final judgment in a criminal case, however grave the offense of which the accused is convicted, was not at common law, and is not now, a necessary element of due process of law. It is wholly within the discretion of the state to allow or not to allow such a review.

*McKane v. Durston*, 153 U.S. 684, 687 (1894); *see also Smith v. Robbins*, 528 U.S. 259, 270 n.5 (2000) ("The Constitution does not, however, require States to create appellate review in the first

place."); *Ross v. Moffitt*, 417 U.S. 600, 606 (1974) ("[A] State is not obliged to provide any appeal at all for criminal defendants.").

Thus, it has long been recognized that "[t]he right to appeal a criminal conviction is a statutory right, not a constitutional right." *United States v. Henderson*, 72 F.3d 463, 464-65 (5th Cir. 1995) (citing *Abney v. United States*, 431 U.S. 651, 656 (1977)). "Nonetheless, if a State has created appellate courts as an integral part of the system for finally adjudicating the guilt or innocence of a defendant, the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (citation, quotation marks, and ellipsis omitted). Louisiana has in fact established such a right under state law. La. Const. art. I, § 19 ("No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based."); La. Code Crim. P. art. 912.1; *State v. Arceneaux*, 983 So.2d 148, 150 (La. App. 5th Cir. 2008) ("There is a constitutional right in Louisiana to an appeal."). In spite of this, however, Turner's argument here does not raise a federal constitutional claim cognizable on habeas review. *Lawrence*, 42 F.3d at 258.

In this case, Turner's sole claim is based on the fact that the written opinion issued by the Louisiana Fourth Circuit did not address the *pro se* arguments he submitted to that Court. This Court has located no state law requirement that the appellate court must provide written reasons to support its decisions, and Turner has pointed to none.

Furthermore, while Turner would have preferred a detailed, written explanation as to why each facet of every claim was rejected by the state court, the federal constitution does not require that any appellate court satisfy such desires. On the contrary, an appellate court is not required by

federal law to issue a written opinion at all. *See e.g.*, *Taylor v. McKeithen*, 407 U.S. 191, 194 n.4 (1972); *White v. Scott*, No. 97-6258, 1998 WL 165162, at *1 (10th Cir. Apr. 9, 1998); *King v. Champion*, 55 F.3d 522, 526 (10th Cir. 1995); *Furman v. United States*, 720 F.2d 263, 264 (2nd Cir. 1983); *United States v. Baynes*, 548 F.2d 481 (3rd Cir. 1977); *Jones v. United States*, No. 88CIV3999, 1990 WL 6566, at *3 (S.D.N.Y. Jan. 24, 1990). Necessarily, then, an appellate court certainly does not violate a person's right to due process simply by failing to expressly provide its reasoning on every facet of every issue raised before it.

That having been said, the administration of justice is rarely perfect, and errors are committed by state appellate courts just as they are by state trial courts, but not all errors involve due process. Due process concerns are implicated when the State fails to assure a criminal defendant an adequate opportunity to present his claims and to obtain a final determination on the merits of the appeal. *Evitts*, 469 U.S. at 402, 405. That is not the case here.

Assuming an error was made by the appellate court in failing to provide complete reasons or perhaps in failing to consider the *pro se* claims at all, Turner was not denied further review of his claims. Turner's *pro se* claims were also presented to the Louisiana Supreme Court, along with his complaint that the claims were not referenced by the appellate court. The Louisiana Supreme Court reviewed his writ application and the Louisiana Fourth's Circuit opinion and denied him relief. Turner has not pointed to any denial of the review process to which he was entitled by state or federal law, as evidence by this habeas corpus petition.

Having failed to present a cognizable federal claim, and having failed to show that the decisions or actions of the state courts were contrary to, or an unreasonable application of, federal law, Turner is not entitled to relief on this claim.

**B.** **Denial of Motions to Recuse and Misrepresentation of Status of the Case (Claim No. 2)**

Turner alleges that the state trial court judge, Judge Keva Landrum Johnson, erred in denying his motion to recuse based on her prior role as interim Orleans Parish District Attorney while his case was being prosecuted, for misrepresenting the status of the case to the Louisiana Fourth Circuit and in denying his motion to reconsider the motion to recuse.

The State contends that Turner's arguments are based solely on state law and are not cognizable under federal habeas law, and otherwise, the denial of relief on these issues was not contrary to or an unreasonable application of federal law related to judicial recusal.

To the extent Turner argues here that Judge Zeno and/or Judge Johnson abused their discretion under state standards of judicial recusal, this alleged violation of state law does not merit federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). A federal habeas corpus court will not grant relief unless errors in a state court proceeding resulted in the "denial of fundamental fairness" under the Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir.1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983)). Most questions concerning a judge's qualifications to hear a case are not constitutional ones. *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008).

However, "the floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (quotation and citation omitted); *Buntion*, 524 F.3d at 672; *see Samuel v. Warden, Avoyelles Corr. Ctr.*, 51 Fed. Appx. 483 (5th Cir. 2002). Two presumptions way in favor of finding that a judicial officer properly

discharged their duties fairly and impartially: "'(1) the presumption of honesty and integrity of the adjudicators; and (2) the presumption that those making decisions affecting the public are doing so in the public interest.'" *Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005) (citing *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052-53 (5th Cir. 1997)).

There are three situations in which presumptive bias has been found: (1) the decision-maker has a direct or pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi-judicial decision-maker has the dual role of investigating and adjudicating disputes and complaints. *Bigby*, 402 F.3d at 559. To secure habeas relief on this basis, the petitioner must "establish that a genuine question exists concerning [the judge's] impartiality." *Id.*, at 559 (citing *Liteky v. United States*, 510 U.S. 540, 552 (1994)). There must be an appearance of impropriety which rises to the level of a fundamental defect resulting in a complete miscarriage of justice; absent that level of severity, habeas relief is not cognizable. *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990).

In this case, Turner bases his claim on Judge Johnson's status as an assistant district attorney and interim district attorney during the preliminary stages of his case, with specific reference to the revocation of his pretrial bond after his failure to appear at scheduled hearings before the prior judge. After a full hearing on March 6, 2009, at which Turner was represented by counsel, Judge Zeno denied the first motion to recuse for lack of evidence to establish a basis for recusal under Louisiana law.[38] A few weeks later, on March 25, 2009, the Louisiana Fourth Circuit also denied

---

[38]St. Rec. Vol. 6 of 8, Motion Hearing Transcript, 3/6/09.

Turner's request for that Court to recuse Judge Johnson, finding the request to be moot in light of Judge Zeno's ruling.[39]

Some three weeks after trial, the Louisiana Fourth Circuit received and filed a *pro se* writ application from Turner, dated by him on June 17, 2009, in which he moved the Court to order the Trial Court to reconsider the motion to recuse.[40] On July 21, 2009, the Louisiana Fourth Circuit vacated Judge Zeno's March 6, 2009, ruling and ordered the Trial Court to reconsider the motion to recuse in light of the decision issued by the Louisiana Supreme Court on April 3, 2009, in *State v. Brown*, 6 So.3d 758 (La. 2009).[41]

On July 27, 2009, Judge Johnson's staff wrote to the Louisiana Fourth Circuit advising that the motion to recuse was reconsidered and was found to be moot, because Turner had been tried on June 22, 2009, and sentenced on July 15, 2009, and his appeal was pending.[42] Contrary to Turner's suggestions, this was an accurate statement of the record at the time since the multiple bill proceedings had not yet occurred.

On August 28, 2009, Turner sought a writ of mandamus from the Louisiana Fourth Circuit to compel Judge Johnson to comply with that Court's prior order.[43] The Court denied the application

---

[39] St. Rec. Vol. 2 of 8, 4th Cir. Order, 2009-K-0156, 3/25/09.

[40] St. Rec. Vol. 4 of 8, 4th Cir. Writ Application, 2009-K-0901, 7/7/09 (dated 6/17/09).

[41] St. Rec. Vol. 4 of 8, 4th Cir. Order, 2009-K-0901, 7/21/09. The Court notes that, in the *State v. Brown* case cited, the Louisiana Supreme Court ordered without stated reasons the recusal of an unidentified trial judge in Division "E" of the Orleans Parish Criminal District Court in a capital case.

[42] St. Rec. Vol. 2 of 8, Letter to 4th Cir. Clerk of Court, 7/27/09.

[43] St. Rec. Vol. 4 of 8, 4th Cir. Writ Application, 2009-K-1194, 9/1/09 (dated 8/28/09).

in light of the Trial Court action on July 27, 2009, and advised Turner that he could seek review of the recusal denial on appeal.[44]

Undaunted, just two days before the multiple bill hearing, Turner's counsel filed a motion for Judge Johnson to reconsider the motion to recuse.[45] The Trial Court denied the motion without comment in writing on October 23, 2009.[46] However, at the multiple bill hearing held that same date, the Trial Court indicated that it was denying the motion to reconsider the motion to recuse in light of the Louisiana Fourth Circuit's October 1, 2009, ruling on Turner's related writ application.[47]

Turner's counsel raised a claim on direct appeal to the Louisiana Fourth Circuit alleging that Judge Zeno abused his discretion in denying the motion to recuse contrary to state law. The Court denied relief finding no abuse of discretion, because Turner did not present evidence to demonstrate a basis for recusal.

Turner raised that claim and his additional arguments regarding Judge Johnson's recusal on post-conviction review. The claim was denied as meritless by the Trial Court, and with no further reasons for denial assigned by the Louisiana Fourth Circuit or Supreme Court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

---

[44]St. Rec. Vol. 4 of 8, 4th Cir. Order, 2009-K-1194, 10/1/09.

[45]St. Rec. Vol. 2 of 8, Motion to Reconsider Motion to Recuse, 10/21/09.

[46]St. Rec. Vol. 2 of 8, Trial Court Order, 10/23/09.

[47]St. Rec. Vol. 6 of 8, Multiple Bill Hearing Transcript, p. 6, 10/23/09.

Turner has not pointed to any facts that would lead to the conclusion that Judge Johnson acted with personal interest or bias in his case in violation of the Constitution. He has not demonstrated that Judge Johnson issued any biased or prejudice-based rulings before or during his trial or that she took any prejudicial actions against him in front of the jury or in sentencing.

There is no evidence in the record that Judge Johnson was partial, biased, or prejudiced to support a claim under the constitutional standards set forth above. Accordingly, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedence. Turner is not entitled to federal habeas relief on this claim.

### C.      Unconstitutionally Excessive Sentence (Claim No. 3)

Turner argues that the 30-year sentence he received as a multiple offender for possession with intent to distribute two rocks of crack cocaine was excessive, in light of his prior two non-violent drug convictions, with the exception of his aggravated crimes against nature conviction, and his alleged history of drug addiction. The State argues to the contrary that Turner's sentence is within the statutory scheme and was based on appropriate grounds not otherwise contrary to Supreme Court law.

Turner's counsel raised this issue on direct appeal. The Louisiana Fourth Circuit found the claim meritless concluding that the Trial Court made the appropriate state guidelines, including consideration of his drug use, in imposing the sentence after the multiple bill hearing. This was the last reasoned opinion issued by a state court on this issue. The Louisiana Supreme Court denied relief without comment.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F. 2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199

F.3d 437, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999) (Table, Text in Westlaw) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence). As here, if a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense. *See Harmelin v. Michigan*, 501 U.S. 957, 993-95 (1991); *Solem v. Helm*, 463 U.S. 277, 290-91 & n.17 (1983).

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *Ewing v. California*, 528 U.S. 11, 23 (2003) (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. *Id.*, 538 U.S. at 30 (quoting *Harmelin*, 501 U.S. at 1005). In those rare case, "when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). When a habeas petitioner has been sentenced under a habitual offender statute, a federal court also considers "the seriousness of his most recent offense, not as it stands alone, but in the light of his prior offenses." *McGruder*, 954 F.2d at 316.

Thus, a federal court will not review a state imposed sentence within the statutory limits without a threshold showing that the sentence is "grossly disproportionate to the offense" so to be completely arbitrary and shocking. *See Smallwood*, 73 F.3d at 1347; *Bonner v. Henderson*, 517 F.2d

135, 136 (5th Cir. 1975). If a sentence is within the statutory limits, a federal habeas court will not upset the terms of that sentence, unless it is first shown to be disproportionate to the offense as to be completely arbitrary and shocking. *Id*., at 1347. Turner has not made this showing.

In denying relief to Turner, the Louisiana courts made a thorough comparison of sentences in other Louisiana cases with that in Turner's case. The state appellate court's detailed comparison correctly demonstrated that the sentence was not disproportionate or distinguishable from the case in which the similar sentence was imposed.

At the time of his crime, La. Rev. Stat. Ann. § 15:529.1(A)(1)(c)(i) (West 2006), under which Turner was sentenced,[48] provided for a fourth felony offender to receive a sentence of not less than 20 years and not more that life:[49]

> (c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
> (i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; . . .

At that time, the term for a first conviction for possession of cocaine with intent to distribute was not less than two years nor more than 30 years, with the first two years to be without benefit of parole, probation, or suspension of sentence, and may receive a fine of not more than $50,000.00. La. Rev. Stat. Ann. § 40:967(B)(4)(b) (West 2006).

---

[48]*See State v. Turner*, 50 So.3d at 842; St. Rec. Vol. 6 of 7, 4th Cir. Opinion, 2010-KA-0038, p. 10, 9/29/10.

[49]The Louisiana Supreme Court has held that the applicable sentencing scheme is the one in effect at the time the offense is committed. *State v. Sugasti*, 820 So.2d 518, 521 (La. 2002). For information purposes, that statute did not change between 2006 and 2010 when he was finally sentenced.

Applying the terms of the habitual offender statute, Turner faced a sentencing range of no less than 30 years to life imprisonment, with a possible fine. He was sentence to serve only 30 years, which was the minimum allowable for his status as a fourth offender.

Turner concedes that he had at least three prior convictions, though two were not necessarily violent. The violent characterization of the prior felony convictions is not alone an issue in the provision under which Turner was sentenced. This is unlike other sentencing provisions, such as § 15:529(A)(1)(c)(ii) (West 2006), which called for a mandatory life sentence under certain circumstances including a combination of violent crimes as defined by Louisiana law.[50]

At the time, Louisiana courts consistently imposed sentences of 30 years or more for similarly situated fourth offenders. *See*, *e.g.*, *State v. Price*, 66 So.3d 495 (La. App. 5th Cir. 2011) (35 years for fourth offender for possession of cocaine with priors of theft, distribution of cocaine, and armed robbery); *State v. Murphy*, 34 So.2d 886 (La. App. 5th Cir. 2010) (30 years for fourth offender for possession of psychoactive drug clonazepam); *State v. Ballard*, No. 10-487, 2010 WL 5027170, at *1 (La. App. 3d Cir. 2010) (minimum sentence of 30 years for fourth offender for distribution of two rocks of cocaine); *State v. Harvey*, 12 So.3d 496 (La. App. 4th Cir. 2009) (30 years for a second offender for possession with intent to distribute cocaine).

Nothing Turner has presented distinguishes his situation from other cases in Louisiana in which a 30 year sentence was imposed under similar circumstances. He has not demonstrated that

---

[50]This part of the statute provided: "If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence."

his sentence was disproportionate to the crime for which he was convicted or otherwise out of line with the sentences imposed upon habitual offenders like himself in similar cases.

Turner also suggests that the sentence amounted to punishment for his alleged addiction to narcotics. In *Robinson v. California*, 370 U.S. 660 (1962), relied upon by Turner, the United States Supreme Court held that the California statute which made addiction to narcotic drugs a criminal offense, punishable as such, was violative of the Eighth and Fourteenth Amendments to the United States Constitution. *Id*., at 665-67. The *Robinson* Court made clear that while it is unconstitutional to impose criminal sanctions on a person simply because he is addicted to drugs, it is <u>not</u> unconstitutional to punish overt acts which may originate from drug addiction. *Id*., at 664-65. Thus, Turner has no basis under *Robinson* or other federal law to avoid imposition of the habitual offender laws based on his claim that he was a drug addict. *See Bailey v. United States*, 386 F.2d 1, 4 (5th Cir. 1967) (finding that *Robinson* did not prohibit punishment for crime even if motivated by drug use). The Court also notes, as pointed out by the Louisiana Fourth Circuit, the Trial Court considered the testimony regarding his alleged addiction as a mitigating factor in imposing the sentence. Turner was entitled to nothing more under the circumstances of his case.

Turner has not established that his situation is an exception to the cases cited above in which a 30 year sentence was imposed. His commission of felony after felony warranted the sentence, which was well within the sentencing range, and actually at the minimum possible under Louisiana law. The imposition of that sentence upon Turner as a fourth felony offender was not so extreme that it violated the Eighth Amendment.

For the reasons discussed above, the state courts' finding that Turner's sentence was not excessive, was not cruel and unusual, and was not otherwise unconstitutional, was not contrary to

established Supreme Court case law, nor was it an unreasonable application of that precedent.  This claim is without merit.

### D.  Insufficient Evidence of Specific Intent (Claim No. 4)

Turner alleges that the State failed to present sufficient evidence of his specific intent to support the guilty verdict.  The State argues that the un-briefed claim should be dismissed as conclusory and for failure to provide sufficient information to warrant federal review.

Turner raised this claim in his *pro se* supplemental memorandum on direct appeal.  In that pleading, he argued that the State failed to produce sufficient evidence at trial to establish that he had intent to distribute the crack in his possession.  His conviction and sentence were affirmed on direct appeal without comment on this issue in particular by either the Louisiana Fourth Circuit or the Louisiana Supreme Court.

The State is correct, in that it is well settled that a conclusory claim is insufficient to present an cognizable issue for federal habeas review.

> [A] court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained the record, to be of probative evidentiary value . . . mere conclusory allegations do not raise a constitutional issue in a habeas proceeding.

(citations omitted)  *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983); *see also*, *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

Thus, when a petitioner's assertion is nothing more than a self-serving and conclusory allegation with no evidence or valid argument in support, it is insufficient to entitle a habeas corpus relief.  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (the petitioner must provide more than "conclusory allegations unsupported by specifics"); *Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at

799; *see also*, *Smallwood*, 73 F.3d at 1351 (conclusory allegations "do not constitute the kind of evidence necessary to raise a fact issue sufficient to warrant an evidentiary hearing").

In this case, Turner has not in <u>this</u> analyzed or discussed his claim, much less discussed it in terms of the relevant federal law under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  However, the Court must recognize that Turner presented a fully briefed claim to the Louisiana courts.  His situation is thus distinguishable from those conclusory claims rejected in the cases cited above.  As implied by the Fifth Circuit in *Ross*, a conclusory claim in <u>both</u> the state and federal court is not adequate to warrant federal review.  Here, the Court can look to Turner's assertions under *Jackson* made in the Louisiana Fourth Circuit and Louisiana Supreme Court and find more than conclusory assertions sufficient to consider the claim.  In the interest of justice, the Court will do so.

Claims of insufficient evidence present a mixed question of law and fact.  *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).  The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*.  *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).  In Turner's case, the appeal and subsequent writ application were denied on the merits by the state courts, albeit without comment on this claim, and the Court finds that the deferential standard under the AEDPA is to be applied here.

The appropriate standard for determining the sufficiency of evidence is that set forth by the United States Supreme Court in *Jackson*, which was relied upon by the state appellate court.  The Court first notes, however, Louisiana law allows a crime to be proven by circumstantial evidence. Under Louisiana law, "[t]he rule as to circumstantial evidence is:  assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of

innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, but must apply the *Jackson* and AEDPA standards of review. *Gilley*, 968 F.2d at 467 (citing *Schrader*, 904 F.2d at 284).

As for the circumstantial evidence rule itself, relied upon by petitioner, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); *accord State v. Williams*, 693 So.2d at 208. The appropriate standard for this Court remains *Jackson*.

Under *Jackson*, 443 U.S. at 307, a court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 Fed. Appx. 817, 821 (5th Cir. 2011). To determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16); *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, __, 130 S. Ct. 665, 672, 673 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under *Jackson*);

*Johnson v. Cain*, Fed. Appx. 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at trial.") (quoting *Jackson*, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses; those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). A reviewing habeas court is not authorized to substitute its interpretation of the evidence or the credibility of witnesses for that of the fact-finder. *Weeks*, 55 F.3d at 1062. In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).

Turner was charged with and convicted of possession with intent to distribute cocaine in violation of La. Rev. Stat. Ann. § 40:967(A)(1).[51] To support a conviction, the State had to prove beyond a reasonable doubt that Turner (1) knowingly possessed the cocaine, and (2) had the intent to distribute the cocaine. *Id.*; *see also State v. Smith*, 868 So.2d 794, 799 (La. App. 1st Cir. 2003).

Louisiana law defines specific criminal intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1); *State v. Young*, 764 So.2d 998, 1006

---

[51]Cocaine is a Schedule II drug pursuant to La. Rev. Stat. Ann. § 40:964.

(La. App. 1st Cir. 2000). The intent to distribute may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of an intent to distribute. *State v. Douzart*, 89 So.3d 1214, 1220 (La. App. 4th Cir. 2012) (citing *State v. Dickerson*, 538 So.2d 1063 (La. App. 4th Cir. 1989)); *State v. White*, 715 So.2d 714, 717 (La. App. 5th Cir. 1998). In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity of the drug is so large that no other inference is possible. *State v. Hearold*, 603 So.2d 731, 735-36 (La. 1992).

The Louisiana Supreme Court has recognized certain non-exclusive factors related to a defendant's actual possession which may give rise to a reasonable inference that the defendant had the specific intent to distribute: 1) previous attempts to distribute; 2) whether the drug was in a form consistent with distribution to others; 3) the amount of the drug; 4) expert or other testimony showing the amount found in the defendant's possession to be inconsistent with personal use only; and 5) paraphernalia evidencing an intent to distribute. *State v. Hearold*, 603 So.2d at 734; *State v. Mosley*, 13 So.3d 705, 711 (La. App. 5th Cir. 2009); *State v. Carey*, 975 So.2d 27, 29 (La. App. 5th Cir. 2007). Testimony of street value and dosage of the drug is also relevant to the issue of intent to distribute. *State v. Cummings*, 57 So.3d 499, 504 (La. App. 2d Cir. 2011) (citing *State v. Gladney*, 29,791 (La. App. 2d Cir. 1997)). Louisiana rules of evidence permit law enforcement officers to express an opinion regarding matters of personal knowledge gained through experience, even if the officer is not qualified first as an expert. La. Code Ev. art. 701; *State v. Lowery*, 609 So.2d 1125, 1128 (La. App. 2d Cir. 1992); *State v. Holden*, 30 So.3d 1053, 1058 n.3 (La. App. 2d Cir. 2010).

Louisiana law also recognizes that an accused need not actually possess the drug, but may be in constructive possession to violate the statute. *State v. Major*, 888 So.2d 798, 802 (La. 2004). A person is in constructive possession of a drug if it is subject to his dominion and control. *State v. Trahan*, 425 So.2d 1222 (La. 1983). The Louisiana Supreme Court has set forth certain factors to consider in determining whether a person exercised dominion and control sufficient to constitute constructive possession: (1) the person knew that illegal drugs were present in the area; (2) the person's relationship to the person in actual possession of the drugs; (3) evidence of recent drug use; (4) the person's proximity to the drugs; and (5) any evidence that the area is frequented by drug users. *State v. Pollard*, 640 So.2d 882, 888 (La. App. 4th Cir. 1994); *State v. Bobo*, 77 So.3d 1, 7 (La. App. 2d Cir. 2011).

Turner's focus here is on the evidence adduced to prove a specific intent. On this point, he argued in his state court pleadings that the State failed to prove adequate evidence of intent to distribute the cocaine. He further argues that the State did not disprove that he had the cocaine for personal use. As a result, the State failed to prove every element of the crime charged. He relies heavily on testimony presented at the preliminary conference, not the testimony before the jury at trial. Under *Jackson*, however, the court's consideration extends only to what was presented at trial. *McDaniel*, 130 S. Ct. at 672, 673.

In this case, the jury heard the testimony of Officer Frankie Watts and Officer Brian Elsensohn, who along with Officer Scott Rodrigue, were working an undercover operation in the

Treme neighborhood at the intersection of North Rampart and St. Philip Streets.[52] The neighborhood

had been targeted because of its high incident of narcotics and other criminal activity.[53]

Watts was approached by a man who offered to take him to a location where he could buy

drugs.[54] He followed the man to a house near Ursuline and Marais Streets.[55] Turner approached the

man, and he handed Turner $10.00.[56] Turner then reached into his mouth and pulled out some rock-

like substances. Based on his years of experience, Officer Watts recognized it to be crack cocaine.

He was standing less than 10 feet when he observed the transaction.[57] Officer Watts had also

previously arrested Turner for crack cocaine related crimes.[58]

The man called Officer Watts over to choose which rock he wanted to buy. After observing

the rocks, Officer Watts identified himself as a police officer and showed his badge and signaled for

the other officers.[59] Turner discarded the rocks onto the ground.[60] The other officers arrived and

detained Turner, while Officer Watts retrieved the rocks. The money was never taken into evidence

---

[52]St. Rec. Vol. 6 of 8, Trial Transcript, p. 29 (Watts), pp. 63-64 (Elsensohn), 6/22/09.

[53]Id., p. 28 (Watts), p. 64 (Elsensohn).

[54]Id., p. 30 (Watts), p. 65 (Elsensohn).

[55]Id., p. 30 (Watts), p. 65 (Elsensohn).

[56]Id., p. 30 (Watts).

[57]Id., p. 35 (Watts).

[58]Id., pp. 35-36 (Watts).

[59]Id., pp. 30-31 (Watts).

[60]Id., pp. 31 (Watts).

by the transport officers.[61]   The cocaine recovered was presented at trial, along with stipulated testimony regarding its positive testing as cocaine.[62]

Based on the testimony outlined above and the verdict, the jury apparently found the State's evidence and testimony to be the more credible version of the facts regarding the exchange of money for drugs, even though the $10.00 was not recovered.   The determination of the credibility of a witness is within the province of the jury and is not to be disturbed on habeas review.   *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions); *Holderfield v. Jones*, 903 F. Supp. 1011, 1018 (E.D. La. 1995) (citing *U.S. v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)) (The habeas court should defer to the jury's resolution of credibility determinations and justifiable inferences of fact.).   The jury's resolve was reasonable and supported by the evidence and testimony.

The jury received direct and circumstantial evidence to establish that Turner was in possession of multiple rocks of cocaine, in an area known for narcotics activity, and intended to and did sell it or distribute it to the other man and Officer Watts.   This evidence, taken in a light most favorable to the prosecution, was more than sufficient to support a verdict for possession with intent to distribute cocaine.

The state court's denial of relief on this claim was not contrary to, or an unreasonable application of *Jackson*.   Turner is not entitled to relief on this claim.

---

[61]*Id.*, pp. 48, 51 (Watts).

[62]*Id.*, pp. 32-33, 62-63 (Watts).

### E.    Ineffective Assistance of Counsel (Claim Nos. 5 and 8)

Turner alleges that his counsel's errors before trial and during the multiple bill proceeding denied him effective assistance of counsel on several grounds.  In addition, he contends that the state courts failed to apply the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), when denying relief on his ineffective assistance of counsel claim on post-conviction review.[63]  The State argues that Turner is not entitled to relief under *Strickland* on any of his grounds presented.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009).  The question is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland*, in which the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's representation fell

---

[63]Rec. Doc. No. 10.

below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Cantu v. Thaler*, 632 F.3d 157, 163 (5th Cir. 2011). The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "'a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 791.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional

issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross*, 694 F.2d at 1012).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

(citations and quotation marks omitted) *Harrington*, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 556 U.S. at 121 n.2).

Before proceeding to Turner's individual complaints about counsel, the Court notes that he suggests in his pleadings that counsel's "errors" should be considered collectively to establish that he is entitled to habeas relief. Such is not the case. When, as set out below, the individual contentions are meritless, that result cannot be changed simply by asserting them collectively. *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006); *Miller*, 200 F.3d at 286 n.6. As the United

States Fifth Circuit noted with respect to analogous claims of cumulative error: "Twenty times zero equals zero." *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987). The Court will discuss each of the individual grounds raised by Turner.

### a.&b. Failed to File a Written Objection to the Multiple Bill and Failed to Object to Insufficient Evidence During Habitual Offender Proceedings

Turner argues that his counsel erred in failing to object to the evidence presented by the State at the multiple bill hearing. Specifically, he alleges that counsel should have objected on the grounds that the State failed to produce transcripts or minute entries to show that the prior pleas relied were voluntarily or knowingly made with awareness of the consequences. He also complains that his counsel did not file a written objection to the multiple bill as provided for under La. Rev. Stat. Ann. § 15:529.1, which would have allowed him to challenge the multiple bill in later proceedings.

The Court finds that Turner's allegations are factually incorrect. Prior to the multiple bill hearing, his counsel in fact filed a written response to the multiple bill, along with a motion to quash the multiple bill and a motion styled as one for new trial, in which he argued that the State's evidence of the prior offenses, including the propriety of the prior convictions under *Boykin*, was insufficient to prove the elements required for the multiple bill.[64] These motions were argued to the Court before the multiple bill hearing started.[65] The Court denied the motion to quash before trial and also denied the motion for new trial on the multiple bill that same day.[66]

---

[64]St. Rec. Vol. 2 of 8, Response to Multiple Bill, 8/24/09; Motion to Quash Multiple Bill, 8/24/09; Motion for New Trial, 8/24/09; *see also*, Motion to Quash Multiple Bill, 7/13/09.

[65]St. Rec. Vol. 6 of 8, Multiple Bill Hearing Transcript, pp. 2-5, 10/23/09.

[66]*Id.*, p. 5; Trial Court Order, 10/23/09; Trial Court Order(2), 10/23/09; Trial Court Order(3), 10/23/09; Trial Court Order(4), 10/23/09.

The record also shows that counsel unsuccessfully lodged objections to the packet of evidence produced at the hearing as inadequate proof of a plea or conviction, because the documents were not from the clerk of court.[67] The Court denied the objection because the records, which included fingerprints, minute entries, docket sheets, and similar items, were certified by the clerk of court.[68]

Furthermore, counsel would have had no other basis to challenge the evidence presented since it was appropriate under Louisiana law. To establish that a defendant is a habitual offender under La. Rev. Stat. Ann. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. *State v. Shelton*, 621 So.2d 769, 779 (La. 1993); *State v. Staggers*, 860 So.2d 174, 180 (La. App. 5th Cir. 2003). Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction and representation of counsel. *Id*. However, independent proof, such as matching fingerprints and other vital information, is required to show that the defendant is the same person identified in those records. *State v. Walker*, 795 So.2d 459, 463 (La. App. 5th Cir. 2001).

Turner does not challenge the fact that these record items were produced at his multiple bill hearing for each of his prior convictions. The record contains the transcript of the multiple bill hearing and copies of the documents presented by the State, including but not limited to the minute entries and/or signed forms which indicated that Turner's constitutional rights were explained to him and that he waived those rights in each case.[69] Furthermore, he did not nor has he now pointed to

---

[67]St. Rec. Vol. 6 of 8, Multiple Bill Hearing Transcript, p. 15, 10/23/09.

[68]*Id*.

[69]St. Rec. Vol. 2 of 8, Minute Entry, 436336, 7/16/03; Plea of Guilty, 368785, 3/24/94; Minute Entry, 368785, 3/24/94; Waiver of Constitutional Rights Plea of Guilty, 352125, 3/17/92; Minute Entry, 352125, 6/13/94.

any evidence which would establish an infringement of his rights or a procedural irregularity in the prior pleas of guilty. Without some proof of such an irregularity, the State was not required to produce a "perfect transcript" of the prior pleas. *State v. Shelton*, 621 So.2d at 779-80. Turner's contention to the contrary is incorrect.

Turner has not presented any basis for counsel to have further objected to the evidence presented at the multiple bill hearing. Counsel does not perform deficiently in failing to lodge a meritless objection. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."); *see also*, *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

Turner's claim is based on an erroneous premise and fails to establish deficient performance by his counsel. The denial of relief by the state courts was not contrary to or an unreasonable application of *Strickland*. He is not entitled to relief on this claim.

### c.     Failed to Object to the Admissibility of the Multiple Bill

Turner argues that counsel should have objected to the State's introduction of the multiple bill as evidence during the multiple bill hearing. Specifically, he alleges that the form of the bill did not comply with La. Code Crim. P. art. 871(B), (C) which would require a certification that the fingerprints thereon are those of the defendant with the date. This article dictates that the certification of fingerprints be placed on a bill after a judgment of guilty:

> (B)(1)(a)     In every judgment of guilty of a felony or of one of the misdemeanors enumerated in Subparagraph (2) of this Paragraph, the sheriff shall cause to be attached to the bill of indictment or information or indictment the fingerprints of the defendant against whom such judgment is rendered.
> (b)(i)   Beneath such fingerprints shall be appended a certificate to the following effect:

"I hereby certify that the above and foregoing fingerprints on this bill are the fingerprints of the defendant, and that they were placed thereon by said defendant this _____ day of _____, _____."

(ii)      The certificate shall be signed by the sheriff or other law enforcement officer who has custody of the defendant.

. . .

C.      The certificate required by Paragraph B of this Article shall be admissible in evidence in the courts of this state as prima facie evidence that the fingerprints appearing thereon are the fingerprints of the defendant against whom the judgment of guilty of a felony or one of the enumerated misdemeanors was rendered.

Turners reliance on this article to support his arguments is misplaced.  As a fundamental premise, the certification is required when fingerprints are affixed <u>after</u> a judgment of guilt.  Turner had not yet been adjudicated to be, or guilty as, a multiple offender when the multiple bill was introduced.  A reading of the multiple bill transcript reflects that the multiple bill was introduced by the State as Exhibit 6 for the purpose of comparing the prior case numbers listed therein with the evidence packs of those prior convictions which also were introduced as exhibit evidence at the hearing.[70]  The multiple bill was not admitted for any other purpose.  The State, or the Sheriff, was not required to place a certification on the multiple bill, since Turner was not yet adjudicated a multiple offender, was not yet sentenced on the multiple bill, and had not yet affixed his fingerprints to the multiple bill.  That is, after all, why the hearing was being held.  Turner's argument is placing the proverbial cart before the horse.

As such, he has again failed to present a basis for counsel to have objected to the State's evidence, particularly the introduction of the multiple bill.  He has not pointed to a deficient performance by his counsel in failing to make this baseless objection.  *See Koch*, 907 F.2d at 530.

---

[70]St. Rec. Vol. 6 of 8, Multiple Bill Hearing Transcript, pp. 17-18, 10/23/09.

Turner's claim once again is based on an erroneous premise and fails to establish deficient performance by his counsel. The denial of relief by the state courts was not contrary to or an unreasonable application of *Strickland*. He is not entitled to relief on this claim.

### d.      <u>Failed to Inform the Court About Pending *Pro Se* Motion to Recuse</u>

Turner argues that his counsel should have moved for a stay or informed the Trial Court that Turner had a *pro se* writ application seeking to recuse the trial judge pending in the Louisiana Fourth Circuit. Although dated by Turner June 16, 2009, the writ application was filed by the clerk of the Louisiana Fourth Circuit on July 7, 2009, which was fifteen days <u>after</u> trial.[71]

Turner claims, without proof other than his self-serving argument, that he notified his Trial Counsel about the pending writ application and asked counsel to move for a stay until that writ could be resolved. Turner claims that counsel told him he would file a motion to stay, and counsel never did. He claims this was prejudicial, because as a result, he was tried, convicted and sentenced without an opportunity to have the trial judge recused.

As previously set forth, Turner represented himself at trial, and the Court appointed his attorney to remain as stand-by counsel only, to advise Turner on legal points but without further participation in the proceedings. The fact that Turner representative himself prevents him from claiming ineffective assistance of counsel during his trial. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"). The Supreme Court has "emphasized that although the defendant 'may conduct his own defense ultimately to his

---

[71]St. Rec. Vol. 4 of 8, 4th Cir. Writ Application, 2009-K-0901, 7/7/09 (dated 6/17/09).

own detriment, his choice must be honored.'" (citation omitted) *Godinez v. Moran*, 509 U.S. 389, 400 (1993) (quoting *Faretta*, 422 U.S. at 834).

Furthermore, in that capacity, the obligation was on Turner to present any request he had to the Court. His stand-by counsel had no duty to act on his behalf in presenting matters to the Court. *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978) (noting that although a defendant has a constitutional right to represent himself, there is no right to hybrid representation, partly by counsel and partly by himself). Because his attorney was appointed as stand-by counsel only, Turner is not entitled to relief for any alleged ineffectiveness of such counsel. *See United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998) (citing *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir.1997)); *see United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir. 1998) (opining that, if defendant "had no right to standby counsel, it seems unlikely that standby counsel's failure to assist could be a violation of his Sixth Amendment rights").

Turner did not himself ask for a stay or mention his writ application to the state trial court when he had ample opportunity to do so. The transcript demonstrates that, prior to the start of voir dire, his counsel notified the Court of Turner's intent to represent himself, and the Court conducted a *Faretta* examination of his competence to waive counsel. At no time did Turner request a stay or mention the writ application to the Court on his own behalf.

In addition, even if counsel could have or was able to address the Trial Court on this issue, Turner has not shown prejudice as a result of his failure to do so. Contrary to Turner's suggestion, the failure to request a stay was not the cause of his conviction. Instead, it was the more than sufficient evidence of his guilt, which this Court has already addressed, that led to his conviction and

sentence. Thus, even if a stay had been requested and granted, it would have simply postponed the trial and the inevitable conviction.

Furthermore, the Louisiana Fourth Circuit ultimately ordered the Trial Court to reconsider his motion to recuse, and eventually satisfied itself that the motion, which was filed <u>after</u> trial was completed, was moot.[72]  The Court also advised Turner that he could raise the issue on appeal.[73] Turner did get review of the recusal denial, albeit it not in his favor.

The record does not reflect Turner's stand-by counsel acted in a deficient manner below reasonable standards applicable to that rule or that the failure to request a stay was prejudicial. The denial of relief by the state courts was not contrary to or an unreasonable application of *Strickland*. He is not entitled to relief on this claim.

### F.      Denial of Right to Self-Representation During Multiple Bill Proceedings (Claim No. 6)

Turner alleges that he was denied the right to represent himself at the multiple bill proceedings when stand-by counsel provided unsolicited assistance.  Turner offers no argument or discussion in support of this claim.  A reading of the transcript does not reflect that he asked to represent himself at the hearing as he had done in other proceedings.[74]  A criminal defendant has the constitutional right to waive his right to counsel and present his own defense.  *Faretta*, 422 U.S. at 817-22; *United States v. Long*, 597 F.3d 720 (5th Cir. 2010).  Waiver of that right must be knowing and intelligent, and the defendant must clearly and unequivocally request self-representation. *Long*,

---

[72]St. Rec. Vol. 4 of 8, 4th Cir. Order, 2009-K-0901, 7/21/09; 4th Cir. Order, 2009-K-1194, 10/1/09.

[73]St. Rec. Vol. 4 of 8, 4th Cir. Order, 2009-K-1194, 10/1/09.

[74]*See e.g.*, St. Rec. Vol. 6 of 8, Trial Transcript, p. 3, 6/22/09 (Turner advised the court that he wanted to represent himself at trial); Sentencing Transcript, p. 3, 7/15/09 (Counsel indicating that Turner expressed his desire to represent himself on direct appeal but did not represent himself at the sentencing hearing itself.)

597 F.3d at 723.  Turner made no such expression to the Court of his intent to represent himself at the multiple bill proceeding.  He instead allowed his counsel to argue each of the motions, question the witnesses, including Turner's mother, and communicate for him to the Court.

Without an indication of his intent to represent himself at that hearing, Turner has not indicated a denial of his right to do so.  The denial of relief by the state courts was not contrary to or an unreasonable application of federal law.  He is not entitled to relief on this claim.

G.     **The Trial Court Abused Its Discretion in Denying the Application for Post-Conviction Relief (Claim No. 7)**

Turner alleges that the Trial Court abused its discretion in denying his application for post-conviction relief.  He again fails to discuss or argue this claim in his briefs.  In his state application for post-conviction relief, Turner raised a similar claim in which he argued that the Trial Court abused its discretion because his claims had merit and the Court did not cite law, hold a hearing, or give reasons for its denial of relief.

Turner here challenges the Trial Court's handling of his application for post-conviction relief.  An attack on a state post-conviction proceeding does not entitle a petitioner to federal habeas relief in respect to his conviction, as it "is an attack on a proceeding collateral to the detention and not the detention itself."  *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987); *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992) ("infirmities in state habeas proceedings do not constitute grounds for federal habeas relief"); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) (irregularities occurring during state post-conviction review do not state a claim for relief in federal habeas corpus); *Kelly v. Cockrell*, 72 Fed. Appx. 67, 78 (5th Cir. 2003).  Thus, Turner has not presented a cognizable federal habeas claim.

The denial of relief by the state courts was not contrary to or an unreasonable application of federal law. He is not entitled to relief on this claim.

**VI.**  <u>**Recommendation**</u>

For the foregoing reasons, it is **RECOMMENDED** that Paul L. Turner's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[75]

New Orleans, Louisiana, this 28th day of September, 2012.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[75]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.